UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

UNITED STATES OF AMERICA,

      Plaintiff,                        Hon. Jane M. Beckering

v.                                  Case No. 1:20-cr-0163

CHADRICK AKEEM PERRY,

      Defendant.

_____/

## **REPORT AND RECOMMENDATTION**

This matter is before the Court on Defendant Chadrick Akeem Perry's motion to dismiss the indictment for violation of his rights under the Speedy Trial Act. (ECF No. 52). The government filed a response in opposition to the motion (ECF No. 58), and Mr. Perry replied (ECF No. 59). District Judge Jane Beckering referred this matter to the undersigned judicial officer for purposes of making a report and recommendation.

The Court conducted an evidentiary hearing on this matter on October 21, 2022. (Amended Minutes, ECF No. 61). The government's lone witness was the acting U.S. Marshal for the Western District of Michigan, Joseph Guzman.[1] (*Id.* at

[1] The undersigned judicial officer finds the entirety of Marshal Guzman's testimony credible. Moreover, given the undersigned's experience, no one could reasonably question the competence or professionalism of the Marshals Service in the Western District of Michigan. That is not at issue here.

PageID.316).  After the transcript of the hearing was prepared, the Court ordered post-hearing briefs to be filed by October 31, 2022.  (Order, ECF No. 63).  The government and Mr. Perry each timely filed their supplemental briefs.  (ECF No. 64 and 65, respectively).  The government proffered additional evidence in the form of two Marshal Service emails (ECF No. 64-1, 64-3) and a declaration from the Chief of Psychological Evaluations for the Federal Bureau of Prisons (BOP) (ECF No. 64-2).  Mr. Perry objects to the admission of this additional evidence.  (ECF No. 66).

For the reasons stated herein, the undersigned judicial officer sustains Mr. Perry's objection to the government's post-hearing evidence.  Also for the reasons stated herein, the undersigned recommends that the indictment be dismissed for violation of the Speedy Trial Act, but that the dismissal be without prejudice.

## Relevant Facts and Procedural History

A federal grand jury indicted Mr. Perry on October 13, 2020, with one count of being a felon in possession of a firearm and one count of being a felon in possession of ammunition, both in violation of 18 U.S.C. § 922(g)(1).  (ECF No. 1).  The offenses allegedly occurred on August 27, 2020.  (*See id.* at PageID.1, 2).

Mr. Perry was arrested and made his initial appearance on Sunday, October 18, 2020; the initial appearance was conducted by video.  (Minutes, ECF No. 8).  Mr. Perry requested a court-appointed attorney, but the proceedings ended prematurely due to Mr. Perry's continued disruptive conduct.  The Court appointed an Assistant Federal Public Defender to represent him.

The next day, Mr. Perry entered a not guilty plea. (Minutes, ECF No. 9). On October 20, the Court conducted an initial pretrial conference and a hearing on the government's motion for pretrial detention. (Minutes, ECF No. 13). The Court ordered that Mr. Perry be detained pending trial. (Order, ECF No. 14). The Court thereafter set a trial date of December 15, 2020. (Order, ECF No. 15).

On November 4, 2020, defense counsel filed a motion seeking an order for an examination to determine Mr. Perry's competency to stand trial. (ECF No. 16). The Court conducted a video hearing on the motion on November 18, 2020. (Minutes, ECF No. 19). That same day, the Court granted the motion and entered an order that a hearing be conducted to determine Mr. Perry's competency. (ECF No. 20). The Court ordered the Attorney General to designate an appropriate facility within 45 days, and to complete the psychiatric or psychological examination within ninety days. (*Id.* at PageID.46). On November 25, 2020, the Court issued the order to transport Mr. Perry to Metropolitan Correctional Center (MCC) Chicago within ten days. (ECF No. 21). The Marshal Service took Mr. Perry to MCC Chicago on November 27, 2020, by ground transportation. (*See* 10/21/22 Hrg. Exh. 1 (also found at ECF No. 58-1, PageID.302)).

On December 21, 2020, the Warden of MCC Chicago requested an extension of time to complete the competency evaluation, due to restrictions imposed from the COVID-19 pandemic. (ECF No. 22) The Court granted that request, extending the deadline for submitting the report to February 14, 2021. (ECF No. 23). The evaluation was completed, and the Marshal Service brought Mr. Perry back to the

district (the Newaygo County Jail) on January 28, 2021, by ground transportation. (*See* 10/21/22 Hrg. Exh. 1 (ECF No. 58-1, PageID.302)).

On February 11, 2021, Dr. Jason Dana, Chief of Psychology Services at MCC Chicago, issued a forensic report opining that Mr. Perry was competent to stand trial. (ECF No. 24, PageID.62-63 (restricted access)).  The Court conducted a hearing on March 15, 2021.[2]  (Minutes, ECF No. 28).  During this hearing, counsel for Mr. Perry brought to the Court's attention additional records relating to the issue of Mr. Perry's competency, and he requested that a second evaluation be conducted at a facility other than MCC Chicago, with consideration being given to the additional records.[3] Without objection from the government, the Court granted that request.  (3/17/21 Order, ECF No. 31).

The Marshal Service transported Mr. Perry to Federal Correctional Institution (FCI) Butner in North Carolina by airlift, leaving the Newaygo County Jail on April 8, 2021, and arriving at FCI Butner the next day.  (*See* 10/21/22 Hrg. Exh. 1 (ECF No. 58-1, PageID.302)).  In a letter dated April 14, 2022, the Warden of FCI Butner requested a thirty-day extension of the deadline for completing the evaluation, noting that Mr. Perry had been placed in a 21-day COVID-19 quarantine.  (ECF No. 32).  On April 19, 2022, the Court granted that request.  (*Id.* at PageID.73).

---

[2] Mr. Perry participated by video from the Newaygo County Jail where he was being housed.

[3] The hearing was audio recorded, and the recording is available upon request.

On July 12, 2021, the Marshals Service transported Mr. Perry by bus to Atlanta, Georgia, and, on July 23, 2021, from Atlanta to Grady County, Oklahoma. (*See* 10/21/22 Hrg. Exh. 1 (ECF No. 58-1, PageID.302)).[4]  The Marshals Service returned Mr. Perry to this district by airlift on August 10, 2021.  (*Id.*).

Forensic Psychologist Heather Ross of FCI Butner issued her forensic report on September 2, 2021.  (ECF No. 35 (restricted access)).  She conducted an evaluation of Mr. Perry from the time of his arrival at that facility on April 9 until his departure on July 12, 2021.  (*Id.* at PageID.92).  Dr. Ross concluded that Mr. Perry was not competent to stand trial, and she recommended that he "be committed to the custody of the Attorney General for restoration to competency."  (*Id.* at PageID.105, 106).

On September 21, 2021, the Court conducted a competency hearing.  (Minutes, ECF No. 37).  The government and Mr. Perry consented to the findings and opinions in Dr. Ross's report, and, on the bases stated in that report, the Court found Mr. Perry not competent to stand trial.  (Order, ECF No. 38).  Accordingly, the Court ordered that Mr. Perry "be committed to the custody of the Attorney General for further evaluation and treatment for restoration of competency pursuant to 18 U.S.C. § 4241(d) for a period not to exceed 120 days from the date of arrival at the treatment facility."  (*Id.* at PageID.109).  The Court recommended that the evaluation take place at FCC Butner, and ordered that Mr. Perry be transported as soon as a facility was designated.  (*Id.* at PageID.110, 111).

---

[4] The transport records simply note Grady County, but in his hearing testimony, Marshal Guzman clarified that it is in the Oklahoma City area.  (10/21/22 Hrg. Tr. at 20, ECF No. 62, PageID.337).

The Marshals Service transported Mr. Perry from the Newaygo County Jail to the Federal Correctional Institution in Milan, Michigan, on December 29, 2021. (*See* 10/21/22 Hrg. Exh. 1 (ECF No. 58-1, PageID.302)).  This move was made at the request of officials at the Newaygo County Jail, who needed to make room for other prisoners. (J. Guzman, 10/21/22 Hrg. Tr. at 33-34, ECF No. 62, PageID349-50).

On January 18, 2022, the Marshals Service transported Mr. Perry from Milan to Cimarron Correctional Facility in Oklahoma. (*Id.* at PageID.350; s*ee* 10/21/22 Hrg. Exh. 1 (ECF No. 58-1, PageID.302)).  Upon arrival at Cimarron on January 18, Mr. Perry tested positive for the COVID-19 virus and remained in quarantine until being cleared for travel on February 1, 2022. (*Id.*).  On February 17, the Marshals Service transported Mr. Perry from Cimarron to Atlanta, Georgia, by airlift, and, on March 1 to Butner by bus. (*Id.*; *see also* March 4, 2022, Letter from Warden to the Honorable Phillip J. Green, filed on March 22, 2022, at ECF No. 41).[5]  The Court granted FMC Butner's request to extend the time to complete Mr. Perry's evaluation to July 18, 2022. (ECF No. 42).

---

[5] On March 3, 2022, the Bureau of Prisons designated the Federal Medical Center (FMC) Butner, North Carolina, as the facility to provide treatment and to conduct additional psychological and psychiatric evaluation. ("Court only" docket entry by Marshals Service).  Based on this information, on March 7, 2022, the Court ordered the Marshals Service to provide transportation to that facility within ten days. (ECF No. 40).  It is unclear why Mr. Perry had been transported to that facility before the Court was advised of that facility's designation.  At any rate, the March 7 order has no legal effect with respect to the Speedy Trial Act calculations here.  *See United States v. Crane*, 776 F.2d 600, 606 (6th Cir. 1985); *United States v. Mann*, 536 F. Supp.3d 173, 179 (W.D. Mich. 2021).

On June 30, 2022, an evaluation report was issued by Forensic Psychologist Allyson Sharf, Ph.D., of the Mental Health Department of FMC Butner.  (ECF No. 43) (restricted access)).[6]  Dr. Sharf opined that Mr. Perry "is competent to stand trial and can be returned to court for resolution of his legal situation."  (*Id.* at PageID.136).

The Court conducted an evidentiary hearing on August 11, 2022, at which Doctors Allyson Sharf and Heather Ross both testified.  (Minutes, ECF No. 45).  On September 12, 2022, the Court issued a memorandum opinion and order finding Mr. Perry competent to stand trial.  (ECF No. 48 (corrected at ECF No. 50)).

On September 20, 2022, Mr. Perry filed the instant motion seeking dismissal of the indictment for violations of his rights under the Speedy Trial Act.  (ECF No. 52). The government timely responded on October 18, 2022 (ECF No. 58), and Mr. Perry replied (ECF No. 59).  An evidentiary hearing was conducted on October 21, 2022, at which Marshal Guzman was the only witness and the Court received government Exhibits 1 through 3.  (Minutes, ECF No. 61).  Post-hearing briefing was completed on October 31, 2022.  (ECF No. 64, 65).  On November 2, 2022, Mr. Perry filed his objection to the post-hearing evidence proffered by the government.  (ECF No. 66).

---

[6] Dr. Sharf testified during the August 11, 2022, hearing that she supervised and worked collaboratively with a predoctoral psychology intern during Mr. Perry's evaluation.  (8/11/22 Hrg Tr. at 8, ECF No. 56, PageID.146).

<u>**Discussion**</u>

Before addressing the issues raised in Mr. Perry's motion to dismiss the indictment, the undersigned must resolve his objections to the government's post-hearing evidence.   The undersigned will then address separately the issues of whether the indictment should be dismissed and whether that dismissal should be with prejudice.

**I.    The Government's Post-Hearing Evidence.**

The government attached to its post-hearing brief three items of newly proffered evidence.  This includes a March 11, 2021, Marshals Service email (ECF No. 64-1); a declaration from the Bureau of Prisons Chief of Psychological Evaluations (Dr. Boutwell) (ECF No. 64-2); and an October 18, 2022, Marshals Service email (ECF No. 64-3).[7]  Mr. Perry objects to the introduction of any new evidence on the basis that the Court limited post-hearing submissions to argument.   (ECF No. 66, PageID.452).  Mr. Perry specifically objects to Dr. Boutwell's declaration on the bases that it constitutes hearsay evidence and its late submission deprives him of the opportunity for cross-examination.  (*Id.* at PageID.451-52).  Mr. Perry specifically objects to the March 11, 2021, email, on the basis that he is deprived of the opportunity for cross-examination.  (*Id.* at PageID.452).

---

[7] The government also attaches a JPATS Movement Log for Chaddrick Perry (ECF No. 64-4).  This appears to be a duplicate of that the Court admitted during the October 21, 2022, evidentiary hearing.

Mr. Perry's objections are sustained.  First, he correctly notes that the Court's order regarding post-hearing submissions was limited to argument.  (*See* 10/21/22 Hrg. Tr. at 46, ECF No. 62, PageID.362 ("I think what I – might be more beneficial to me is to just have a short follow up brief where you can put your argument in a brief.").  The government mistakenly characterizes the Court's comments regarding the reasons for the lack of available beds at Butner as an invitation to provide additional evidence.[8]  (ECF No. 64, PageID.371-72).  It would be manifestly unfair to Mr. Perry to give the government another bite at the apple, particularly when he would be deprived of the opportunity to test the newly proffered evidence through cross-examination.

The government was on notice of all the issues concerning Mr. Perry's motion to dismiss, not the least of which was whether the nearly five-month delay in getting Mr. Perry transported to FMC Butner for competency restoration would count against the Speedy Trial clock.  Prior to the hearing, the undersigned's courtroom deputy contacted counsel for the government and Mr. Perry specifically to advise them to be prepared to present whatever evidence was needed at the October 21, 2022, evidentiary hearing.  The Court reiterated that in its notice of hearing.  (*See* 9/22/22 Notice, ECF No. 55) ("Counsel shall have any necessary witnesses available at the hearing.").  Despite government counsel's complaint regarding the potential of

---

[8] The undersigned's comments were intended to convey the point that it would be insufficient to the government's burden to simply establish that a bed was unavailable, without also establishing that the lack of available beds existed despite the Bureau of Prisons reasonable efforts to accommodate the anticipated need for beds.  (*See* 10/21/22 Hrg. Tr. at 31-32, ECF No. 62, PageID.347-48).

turning an evidentiary hearing into a week-long trial (*see* 10/21/22 Hrg. Tr. at 31, ECF No. 62, PageID.347) – and hyperbole aside – it is not the Court's responsibility to direct parties as to what evidence to bring to a hearing.

In addition, Dr. Boutwell's declaration constitutes hearsay, in contravention of Federal Rule of Evidence 802.  The rules of evidence apply to evidentiary hearings concerning motions to dismiss indictments, whether conducted by a district judge or a magistrate judge.  *See* Fed. R. Evid. 1101 (exceptions to the application of the federal rules of evidence do not include such hearings).  The government has conceded this point.  (*See* 10/21/22 Hrg. Tr. at 30, ECF No. 62, PageID.346).

Accordingly, the undersigned has not considered the evidence attached to the government's post-hearing brief.  The consideration of the issues in Mr. Perry's motion to dismiss the indictment is limited to the evidence admitted during the evidentiary hearing.

## II.    The Speedy Trial Act.

The Speedy Trial Act requires that a defendant who has pled not guilty to a charge in an indictment be brought to trial within seventy days of his first appearance before a judicial officer of the court in which the charge is pending.  18 U.S.C. § 3161(c)(1).  Failure to bring a defendant to trial within the prescribed time frame results in a dismissal of the charge, upon motion of the defendant.  18 U.S.C. § 3162(a)(2).  In such instance, the Court must determine whether the dismissal is with or without prejudice, considering any relevant factor, including three factors enumerated in the statute.  *See* 18 U.S.C. § 3162(a)(2).

Certain periods of time are excluded from the seventy-day limitation. *See United States v. Dunbar*, 357 F.3d 582, 591 (6th Cir. 2004) ("The Act provides the flexibility necessary to conduct fair criminal trials by excluding days from the seventy-day Speedy Trial clock for various pretrial proceedings."), *vacated and remanded on other grounds in Dunbar v. United States*, 543 U.S. 1099 (2005). Relevant to the instant motion, these periods of exclusion include (1) delay caused by examinations to determine a defendant's competency, (2) delay resulting from the filing of a pretrial motion, (3) delay caused by a defendant's incompetency to stand trial, and (4) delay caused by transporting a defendant to and from places of competency examination and hospitalization.  18 U.S.C. § 3161(h)(1)(A), (D), (F); § 3161(h)(4).   Transportation delays exceeding ten days are presumptively unreasonable and are not excludable from the Speedy Trial clock unless the presumption is rebutted.  18 U.S.C. § 3161(h)(1)(A).

The defendant bears the burden of establishing a violation of the Speedy Trial Act. *See* 18 U.S.C. § 3162(a)(2).  The government bears the burden of rebutting the presumptive ten-day limit on transportation. *See United States v. Zabawa*, 719 F.3d 555, 562 (6th Cir. 2013).

A.    <u>The indictment must be dismissed.</u>

Mr. Perry and the government agree that, apart from transportation delays, 25 days have ticked off the Speedy Trial clock.  (10/22/22 Hrg. Tr. at 3-4, ECF No. 62, PageID.319-20).  The remaining question, then, is whether there were at least 45

transportation days for which the government cannot meet its burden of rebutting the presumption of unreasonableness.

> 1. *The Court's finding of incompetency does not trump the transportation provision.*

The government contends that the statutory provision relating to a finding of incompetency effectively trumps the presumptive ten-day transportation limit. (ECF No. 58, PageID.277). The government argues that "a plain reading of the statute confirms that Section 3161(h)(4) unequivocally excludes 'any period of delay resulting from the fact that the defendant is mentally incompetent.'" (*Id.*). Accordingly, the government reasons, the ten-day transportation rule does not apply once a finding of incompetence is made, and the Court need not consider how long it took to transport Mr. Perry to and from FMC Butner.

The government's view is not without support in case law. *See, e.g., United States v. Lewis*, 484 F. Supp.2d 380, 390-91 (W.D. Pa. 2007); *United States v. Bauman*, No. 07-20052, 2008 WL 5111135, at *2-3 (D. Kan. Dec. 4, 2008); *United States v. DeGideo*, No. 04-100, 2004 WL 1240669, at *4 (E.D. Pa. May 18, 2004). Other courts have taken a contrary view. *See, e.g., United States v. Dellinger*, 980 F. Supp.2d 806, 812-15 (E.D. Mich. 2013); *United States v. Sparks*, 885 F. Supp.2d 92, 100-01 (D.D.C. 2012); *United States v. Hernandez-Amparan*, 600 F. Supp.2d 839, 842-43 (W.D. Tex. 2009). The undersigned finds the latter decisions more persuasive.

In *United States v. Tinklenberg*, the Sixth Circuit rejected an argument similar to the one the government advances here – that the Speedy Trial clock stops from the request for a competency evaluation to the finding of competency. 579 F.3d 589 (6th

Cir. 2009).  The court held that "a delay in transporting a defendant to a mental competency examination beyond the ten day limit imposed by § 3161(h)(1)(F) is presumptively unreasonable, and in the absence of rebutting evidence to explain the additional delay, this extra time is not excludable."  *Id.* at 596.  More recently, the Sixth Circuit has reiterated the *Tinklenberg* holding.  *See United States v. Turner*, 602 F.3d 778  (6th Cir. 2010).

In this context, there is no valid basis for distinguishing the period in which a defendant is deemed incompetent from the period in which competency is still at issue.  A plain reading of the relevant statutory provision belies such a result.  The Speedy Trial Act excludes from the clock:

> delay resulting from transportation of any defendant . . . to or from places of examination *or hospitalization*, except that any time consumed in excess of ten days from the date . . . an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable.

18 U.S.C. § 3161(h)(1)(A) (emphasis added).  The same statutory provision applies to the transportation of defendants, regardless of whether the transportation is being conducted for the purposes of a competency examination or for competency restoration.  Competency restoration necessarily requires hospitalization.  FMC Butner, the facility to which Mr. Perry was sent for competency restoration, is "[a]n administrative security federal medical center."  (*see* www.bop.gov/locations/institutions/buh (viewed November 18, 2022)).  In other words, it is a hospital, one that treats men who are in federal custody.

The undersigned recognizes that the exclusion of time for the period of incompetency is in a separate, later section of the statute – Section 3161(h)(4) – from the provisions in which competency evaluation and transportation are addressed – Sections 3161(h)(1)(A), (F).  But to interpret the provision regarding the period of incompetency as trumping the transportation provision, while competency evaluation does not, would effectively rewrite the statute.  The phrase "evaluation or hospitalization" would effectively be rewritten to exempt competency restoration from other hospitalizations.  But even if incompetency alone could indefinitely toll the Speedy Trial clock, efforts to restore competency – which necessarily involves hospitalization – must be subject to the transportation provision.

The undersigned finds Judge Goldsmith's analysis in the *Dellinger* decision instructive.  Judge Goldsmith noted the following:

> [T]o draw a line based on a finding of incompetence would be to say that Congress intended to protect those that were not yet deemed incompetent, while essentially ignoring those previously declared incompetent.  There is no reason to believe that Congress was less concerned about incompetent defendants than it was about defendants whose competency had not yet been determined.  In both cases, trial cannot proceed until competency is established, and both classes of defendants appear equally worthy of Congressional concern for prompt adjudication of their cases.

*Dellinger*, 980 F. Supp.2d at 813.

      2.   *The government has failed to rebut the presumption that the excess transportation delays were unreasonable.*

There are four periods of transportation in this case that exceeded the ten-day presumptive limit:  (1) the period of March 18, 2021, to April 9, 2021, in which Mr. Perry was transported from the district to FCI Butner for competency evaluation,

which included twelve presumptively unreasonable days of delay; (2) the period of June 29, 2021, to August 10, 2021, in which Mr. Perry was returned to the district from FCI Butner, which included 32 presumptively unreasonable days of delay; (3) the period of September 30, 2021, to March 1, 2022, in which Mr. Perry was transported from the district to FMC Butner for competency restoration, which included 142 presumptively unreasonable days of delay; and (4) the period of July 7, 2022, to August 4, 2022, in which Mr. Perry was transported back to the district from FMC Butner, which included eighteen presumptively unreasonable days of delay.[9] There is a total of 204 presumptively unreasonable transportation days for the four periods.  Accordingly, the government must rebut that presumption as to at least 159 of those days.

In support of its efforts to rebut the presumption, the government cites several challenges the Marshals Service faced in transporting Mr. Perry.  These include the significant demands of moving large number of prisoners around the country with an overburdened airlift system; restrictions resulting from the COVID-19 pandemic; and limited bed space at FMC Butner.  (ECF No. 64, PageID.367).

The government cites the *Turner* decision for the proposition that it may rebut the presumption of unreasonableness by citing "legitimate problems aris[ing] in transportation."  (*Id.* (citing *Turner*, 602 F.3d at 785)).  This, of course, begs the question of what "problems" are considered "legitimate" – in other words, what

---

[9] At the evidentiary hearing, the government agreed with these calculations.  (*See* 10/21/22 Hrg. Tr. at 7-8, ECF No. 62, PageID.323-24).

problems are sufficient to justify delays in transportation.  COVID-19 restrictions are sufficient, at least to some extent; limited bed space may be, depending upon the circumstances leading to the limitation; an overburdened airlift system is decidedly not.

COVID-19 Restrictions

For more than two years, this country – and the world – has struggled under burdens caused by the COVID-19 pandemic, which included travel and other restrictions imposed to minimize the spread of the virus.  Nowhere were these challenges more difficult than at the institutions housing incarcerated persons and the Marshals Service, which is responsible for transporting those persons.  The undersigned finds that the unprecedented restrictions imposed as a result of the COVID-19 pandemic may serve as a legitimate basis for the delay in transportation, but only to the extent a specific restriction caused the delay.  *See, e.g., United States v. King*, No. 1:18-cr-70, 2019 WL 3131118, *3 (W.D. Mich. July 15, 2019) (even justified reasons cannot support indefinite delays in transport); *see also United States v. Phinizy*, Crim. Action No. 18-0323, 2019 WL 2570038, *6 (D.D.C. June 21, 2109) (crediting the government with 21 days for chicken pox exposure, the length of the incubation period).

The government cites to COVID-19 restrictions to justify delays in two of the four periods at issue: the period of March 18, 2021, to April 9, 2021 (the transportation to FCI Butner); and the period of September 30, 2021, to March 1, 2022 (the transportation to FMC Butner).  These will be addressed in turn.

The government cites a COVID-19 outbreak at the Newaygo County Jail for his delayed transport to FCI Butner for his second competency evaluation.[10]  (ECF No. 64, PageID.368).  Marshal Guzman testified that the quarantine imposed as a result of the outbreak caused Mr. Perry to miss his originally scheduled airlift in March 2021.  (10/21/22 Hrg. Tr. at 19-20, ECF No. 62, PageID.335-36).  Mr. Perry then had to wait for the next scheduled airlift, which did not take place until April 8, 2021.  (*Id.* at PageID.336).  Marshall Guzman was unable at the time of the hearing to testify as to the dates the quarantine began or ended.  (*See id.* at PageID.337).  Without specific dates for the quarantine at the Newaygo County Jail, however, it is impossible to discern the amount of time to credit the government.[11]

As for the delays in transporting Mr. Perry to FMC Butner, the government cites the fact that Mr. Perry tested positive for the COVID-19 virus on January 18, 2022, and that he was not cleared until February 1, 2022. (Hrg. Tr. at 34, ECF No. 62, PageID.350; Hrg. Exh. 1).  This is sufficient to rebut the presumption of unreasonableness for this period.  Accordingly, the undersigned is excluding fourteen days from the Speedy Trial clock.

---

[10] The government mistakenly identifies this as Mr. Perry's "first trip to FMC Butner." (ECF No. 64, PageID.368).  But during this period of time, Mr. Perry was being transported to *FCI* Butner for his second competency evaluation.  (*See* April 14, 2021, Letter from FCI Butner Warden to the Honorable Phillip J. Green, ECF No. 32; *see also* Forensic Evaluation Report of Heather Ross, Ph.D., ECF No. 35 (restricted access)).

[11] Even if the Court were to credit the entire delay from March 18, 2021, to April 9, 2021, it would not alter the ultimate decision here, as the unreasonable delay in transporting Mr. Perry to FMC Butner (see discussion below) alone is sufficient to violate his rights under the Speedy Trial Act.

The government also relies on a "COVID moratorium" to justify part of the delay in transporting Mr. Perry from the district to FMC Butner in January 2022. (ECF No. 64, PageID.372-73 (citing 10/21/22 Hrg. Exh. 1 ("Movement scheduled for Jan 13, 2022, cancelled due to Grady County COVID moratorium."))). No information is given regarding the beginning or ending dates of the "moratorium," nor how or why this "moratorium" affected the ability to transport Mr. Perry. Nevertheless, it stands to reason that the moratorium was a restriction on inmate movement at the Grady County Jail, and that it was imposed to serve the interests of thwarting the spread of the COVID-19 virus. That conclusion is supported by the fact that Mr. Perry contracted the COVID-19 virus at the Grady County Jail. Accordingly, the undersigned finds that the government has rebutted the presumption of unreasonableness for the period between the January 13 moratorium declaration and Mr. Perry's January 18 positive COVID-19 test. Five more days are excluded from the Speedy Trial clock.

The government seeks support for its COVID-related justifications from a statement in the Court's memorandum opinion of September 12, 2022, finding Mr. Perry competent to stand trial. (ECF No. 64, PageID.370). In that opinion, the Court noted that "Mr. Perry's transport to the treatment facility (FMC Butner) was delayed due to restrictions imposed as a result of the COVID-19 pandemic." (Memo. Op. and Order (corrected on Sept. 16, 2022), ECF No. 50, PageID.231). The government's reliance on this statement is misplaced. The statement, unsupported by citation to any evidence, was intended as nothing more than a recognition of the uncontroverted

fact that the COVID-19 pandemic caused some delay in Mr. Perry's transport. It was not intended to address the government's burden here of establishing that the entire delay was reasonable; nor could it.

<u>Limited Bed Space at FMC Butner</u>

During the evidentiary hearing, the government attempted to elicit from Marshal Guzman the fact that Mr. Perry's transport to FMC Butner for competency restoration was delayed for a significant period of time as a result of a lack of an available bed at that facility. (10/21/22 Hrg. Tr. at 29, ECF No. 62, PageID.345). Mr. Perry's hearsay objection (*see id.*) was well founded. The parties' dispute over the admissibility of that statement is immaterial, however, to the outcome of the pending motion. Simply establishing a lack of bed space is manifestly insufficient to satisfy the government's burden of overcoming the presumption that the delay of more than four months in transporting Mr. Perry to FMC Butner was unreasonable.[12] The government failed to provide any reason for the lack of bed space during the evidentiary hearing.

Moreover, even if the Court were to consider the government's belated declaration from Dr. Boutwell, the BOP's Chief of Psychological Evaluations (ECF No. 64-2) – putting aside the hearsay rule – it would not alter the outcome here. The declaration discusses generalized and long-term institutional limitations on the BOP's ability to provide competency restoration treatment. (*Id.* at PageID.380-82).

---

[12] Crediting the government with 19 days for the COVID moratorium and Mr. Perry's COVID infection reduces the 152 excess days to 133, which is some four and a half months.

Such is insufficient to meet the government's burden.  *See, e.g., United States v. Noone*, 913 F.2d 20, 26 (1st Cir. 1990) ("[O]rdinary institutional delay is not an excuse." (quoting *United States v. Jervey*, 630 F. Supp. 695, 697 (S.D.N.Y. 1986)); *United States v. Castle*, 906 F.2d 134, 138 (5th Cir. 1990) (noting that the presumption applies unless "some extraordinary event" caused the delay (quoting *Jervey*, 630 F. Supp. at 697); *see also Jervey*, 630 F. Supp. at 697 ("This presumption, as part of a Congressional mandate, applies here unless some extraordinary event occurred in the case to make compliance with the directions of Congress unfeasible."). Notably, the government cites to no authority for the proposition that the lack of bed space is a sufficient reason to justify significant delays in transporting a defendant for competency restoration treatment.

Further, the government cannot rely on the Court's March 7, 2022, transportation order (ECF No. 40) to excuse the delay in transporting Mr. Perry to FMC Butner.  The order was issued after transportation had already taken place, and thus is a nullity.  Nor can the government rely on the fact that the BOP waited until March 3, 2022, to designate FMC Butner as the facility for Mr. Perry's competency restoration.  On September 27, 2021, the Court issued an order committing Mr. Perry to the custody of the Attorney General for the purpose of restoring his competency to stand trial.  (ECF No. 38).  That order placed a time limit on treatment, and it required the Marshals Service to transport Mr. Perry "as soon as [he was] designated to a facility."  (*Id.* at PageID.109-11).  It would be incongruous to allow the government to avoid its responsibility for timely transport simply by delaying for an

unreasonable period of time the designation of a treatment facility.  It defies logic and runs contrary to the purposes of the Speedy Trial Act.

Moreover, to the extent that the government was not already required to transport Mr. Perry under the September 27, 2022, order, the Court violated Mr. Perry's rights under the Speedy Trial Act by not taking corrective action in light of the BOP's delay in designating a treatment facility.  Inexcusable inactivity or neglect by the Court is cause for dismissal under the Speedy Trial Act.  *See, e.g., United States v. Howard*, 218 F.3d 556, 561 (6th Cir. 2000); *United States v. Moss*, 217 F.3d 426, 430-31 (6th Cir. 2000).

<u>The Marshals Service Airlift – JPATS</u>

The government has offered substantial evidence supporting the proposition that the Marshals Service is overburdened by its responsibilities regarding the transport of prisoners around the country.  This should come as a surprise to no one involved in criminal justice in the federal courts.

The Justice Prisoner and Alien Transportation System (JPATS) is a division of the Marshals Service that "manages the coordination, scheduling and secure handling of prisoners in federal custody, transporting them to detention facilities, courts and correctional institutions via a network of aircraft, buses, vans and cars." (10/21/22 Hrg. Exh. 3 (also found at ECF No. 58-3)).  In fiscal year 2021, JPATS managed 205,926 prisoner movements nationally – 92,158 by air and 113,768 by ground (the latter of which does not include movements within a district or within fifty miles of a bordering district).  (*Id.*; Guzman, 10/21/22 Hrg. Tr. at 36-37, ECF

No. 62, PageID.352-53).  This averages out to be more than 840 prisoner movements per day.  (*Id.*).  By any standard, this is a considerable responsibility.

Marshal Guzman testified that, in the Western District of Michigan, JPATS airlift flights are usually scheduled once a month.  (10/21/22 Hrg. Tr. at 17, ECF No. 62, PageID.333).  While the use of commercial airlines to transport prisoners is available, it is both costly and presents significant security risks, particularly when transporting prisoners with mental health issues.  (*Id.* at 16-17, PageID.332-33).

The undersigned is satisfied that the Marshals Service is carrying a heavy burden.  Like most federal agencies, it is trying to do more with less money.  The undersigned is sympathetic to the Marshals Service plight.  But this is not a sufficient basis to justify the transportation delays that occurred in this case.  As noted above, delays resulting from ongoing institutional limitations are presumptively unreasonable.  *See, e.g., Noone*, 913 F.2d at 26; *Castle*, 906 F.2d at 138; *Jervey*, 630 F. Supp. at 697; *see also United States v. Banks*, No. 2:15-cr-168, 2019 WL 6213153, *3 (W.D. Pa. Oct. 28, 2019) ("[C]ourts have routinely found that institutional delay alone is an insufficient basis to overcome the presumption of unreasonableness."); *King*, 2019 WL 3131118 at *3 (rejecting the government's effort to rebut the presumption with "the general observation that JPATS is an overburdened system").  Congress included the ten-day presumptive limit on transportation out of its "desire that the Marshals Service not delay transporting prisoners for economic reasons, such as waiting for more prisoners to be assembled before incurring the cost of moving

them." *Dellinger*, 980 F. Supp.2d at 813 (citing *United States v. Taylor*, 821 F.2d 1377, 1384 n.10 (9th Cir. 1987), *rev'd on other grounds*, 487 U.S. 326 (1988)).

Having found that the government has overcome the presumption of unreasonableness for nineteen of the 204 presumptively unreasonable transportation days, the seventy-day time limit for bringing Mr. Perry to trial has been exceeded by 140 days.[13]    Accordingly, the indictment must be dismissed.  *See* 18 U.S.C. § 3162(a)(2).

B.    <u>The indictment should be dismissed without prejudice.</u>

Having concluded that the indictment must be dismissed, the next step is determining whether the dismissal should be with prejudice.  *See* 18 U.S.C. § 3162(a)(2).  The decision whether to dismiss with prejudice is a matter left to the sound discretion of the Court.  *See, e.g., United States v. Robinson*, 389 F.3d 582, 586 (6th Cir. 2004).  "The Speedy Trial Act does not specify whether dismissal should be with or without prejudice, nor does it contain a default presumption one way or the other."  *Id.* (citing 18 U.S.C. § 3162(a)(2); *United States v. Taylor*, 487 U.S. 326, 334 (1988)).   In making this determination, however, the Court must consider the relevant factors, which includes the seriousness of the offense, the facts and circumstances leading to dismissal, and the impact of reprosecution on the administration of justice.  *See* 18 U.S.C. § 3162(a)(2).

---

[13] The parties have agreed that, absent the transportation delays, 45 days remain on the Speedy Trial clock.  There are 204 excess transportation delays.  Subtracting the nineteen days credited for COVID-related delays, that leaves 185 excess transportation days.  Subtracting the 45 days otherwise remaining on the clock leaves a deficit of 140 days.

For the following reasons, the undersigned judicial officer recommends that the dismissal be without prejudice.

      1.  *Seriousness of the offense charged*

The charge in Count 1 of the indictment of being a felon in possession of a firearm (and ammunition) is undoubtedly a serious offense.  (*See* Indictment, ECF No. 1).  Any offense involving a firearm is serious.  Adding the fact that Mr. Perry has incurred at least one prior felony conviction – rendering him a prohibited person – and that he was allegedly carrying a loaded pistol in a vehicle significantly increases the degree of seriousness.

The offense of a convicted felon's possession of a *firearm* is distinct from a felon's mere possession of *ammunition*; the former being significantly more serious. *Cf. United States v. Mann*, 536 F. Supp.3d 173, 181 (W.D. Mich. 2021) (finding that "possession of several rounds of ammunition by a felon is not particularly serious compared to others").  While possession of ammunition suggests that a firearm *may* also be involved, the considerable danger associated with the *actual* carrying of a loaded pistol in a moving vehicle is self-evident.

The Bail Reform Act of 1984 includes offenses involving firearms among those for which the government can seek a defendant's pretrial detention to protect the safety of other persons in the community, and upon such a motion, the Court must conduct a hearing.[14]  *See* 18 U.S.C. § 3142(f)(1)(E).  Crimes listed in this section of the statute are among the most serious.  *See id.*, § 3142(f)(1)(A)-(E).

---

[14] There is no such provision for the possession of ammunition.

The seriousness of being a felon in possession of a firearm is further reflected in the fact that Congress recently increased the maximum penalty for that offense from ten years to fifteen years' incarceration.  18 U.S.C. § 924(a)(8).[15]  While the increased penalty does not apply to Mr. Perry, as his offense was allegedly committed prior to the change in penalties, it does not alter the fact that Congress views it as a very serious offense.

Mr. Perry's attempt to use potential sentencing guidelines to mitigate the seriousness of the offense (ECF No. 65, PageID.396) is unavailing.[16]  Sentencing guidelines are determined by the Court, not the parties, and they are advisory only.  There are many factors that go into the determination of a given defendant's sentencing guidelines range, some of which are unrelated to the offense of conviction.  An individual may be convicted of a very serious offense but be subject to more lenient guidelines than another person convicted of the same offense.

This factor militates in favor of dismissal without prejudice

### 2. *Facts and circumstances leading to dismissal*

The length of the delays in this case, particularly that associated with the time Mr. Perry waited for transport to FMC Butner for competency restoration, is unquestionably significant.  The undersigned has found that the seventy-day limit

---

[15] The increase in the maximum penalty was accomplished through the passage of the Bipartisan Safer Communities Act of 2022.

[16] The government similarly seeks to use potential sentencing guidelines to support its opposite position regarding the relative seriousness of the offense charged.  (*See* ECF No. 64, PageID.374).  It is similarly unavailing.

was exceeded in this case by 140 days – twice the limit imposed by the Speedy Trial Act.  No one can be happy about that, but that is not the lone consideration to the Court's determination here.  *Cf. Mann*, 536 F. Supp.3d at 181 ("Here the Court acknowledges some prejudice to Defendant due to the inordinate delays in his case. . . . On the other hand, detention before trial is not unusual and does not necessarily mean that dismissal with prejudice is appropriate.").

The record in this case is devoid of any suggestion of prosecutorial misconduct or deliberate effort to delay Mr. Perry's trial, and, to his credit, Mr. Perry does not contend otherwise.  Rather, the delays here were largely the result of inadequate resources for transporting prisoners and inadequate resources for providing competency restoration treatment.  To be sure, these are the responsibilities of the executive branch of the federal government.  But the Court cannot naively blame only this branch of the government for the lack of available resources.

It is evident that Congress needs to take a serious look at the state of affairs at JPATS and the BOP's medical facilities.  Congress has mandated the time limitations on transporting prisoners – a laudable effort to afford defendants a speedy resolution of their cases.  But, if Congress is serious about this, it needs to ensure that proper funding is being afforded and proper oversight is being performed to ensure that the Marshals Service and the BOP have sufficient resources to reasonably accomplish their statutorily mandated responsibilities.

Overall, this factor supports dismissal without prejudice.

### 3. *Impact of reprosecution on the administration of justice*

In analyzing this factor, "[t]he main considerations that courts have taken into account when examining this factor are whether the defendant suffered actual prejudice as a result of the delay and whether the government engaged in prosecutorial misconduct that must be deterred to ensure compliance with the Act." *Howard*, 218 F.3d at 562. Actual prejudice results from a detrimental impact on the merits of any defense caused by the delay, but prejudice also results from the loss of liberty. *See Taylor*, 487 U.S. at 340-41.

Mr. Perry does not contend that the merits of any defense have been adversely affected by the delays associated with his competency examinations and restoration. Instead, he contends that his mental health was adversely affected by the lack of timely, adequate treatment. Mr. Perry offers no specifics, much less proof to support this contention, however. As such, it carries little weight here. *Cf. Dellinger*, 980 F. Supp.3d at 817 ("Defendant . . . does not contend that his condition so worsened during this period [of delay] that the likelihood of ultimate restoration to competency has changed. . . . while the delay in transportation [of defendant] may have stalled his treatment or made treatment more difficult within the four-month timeline initially provided by the Court, it does not appear that this caused such prejudice to Defendant as to warrant dismissal with prejudice.").

As noted above, there is no suggestion that anyone from the government engaged in any intentional misconduct that needs to be deterred. Further, there is no evidence before the Court that indicates that the delays in transportation have

become so frequent and so egregious as to require the deterrence of a reprosecution bar.  Mr. Perry cites to only two cases in which this district has found Speedy Trial Act violations as a result of unreasonable delays in transport.  (*See* ECF No. 65, PageID.400 (citing *United States v. Mann*, 536 F. Supp.3d 173 (W.D. Mich. 2021) (J. Jarbou); *United States v. King*, 2019 WL 3131118 (W.D. Mich. July 15, 2019) (J. Quist).  These are, in the opinion of the undersigned, insufficient to warrant imposing the extreme sanction of dismissal with prejudice.

In *King*, Judge Quist dismissed the indictment without prejudice after finding that 77 days had elapsed on the Speedy Trial clock.  2019 WL 3131118 at *3.  The transportation delays were caused, according to the government, by an overburdened JPATS, a government shutdown, adverse winter weather, and a high-profile sentencing hearing that required additional Marshals Service staffing.  *Id.*  Judge Quist credited some of the reasons, but found the various issues cited insufficient to account for all the delays.  Other than an overburdened JPATS, the issues causing the transportation delays in *King* bear little resemblance to the circumstances in this case.

In *Mann*, Judge Jarbou dismissed an indictment without prejudice, having found excessive delay in transporting the defendant back from a competency examination at FCI Miami.  536 F. Supp.3d at 179-81.  The length of the delay in *Mann* is similar to the instant case, but one prior similar case is insufficient to warrant dismissal with prejudice here.  That may come if the government continues

to experience these types of delay in getting defendants to and from competency examinations or treatment, but we are not there yet.

Moreover, the Court should be reluctant to invoke deterrence as a reason to dismiss the indictment with prejudice.  In light of the conflicting case law concerning the issue of whether a judicial finding of incompetence stops the Speedy Trial clock, notwithstanding the ten-day transportation provision, the government reasonably relied on its belief that the clock was stopped.  Assuming the undersigned's recommendation regarding that issue is adopted by this Court, the government will be on notice that it must effectively address the issues that caused the transportation delays in this case.

For all the foregoing reasons, the undersigned recommends that the dismissal of the indictment be without prejudice.  Dismissal without prejudice is "not a toothless sanction: it forces the Government to obtain a new indictment if it decides to reprosecute, and it exposes the prosecution to dismissal on statute of limitations grounds." *Taylor*, 487 U.S. at 342.

## Conclusion

This cause having come before the Court on Defendant Chadrick Perry's motion to dismiss the indictment, and for the reasons stated herein, the undersigned judicial officer recommends that the motion (ECF No. 52) be granted.  The undersigned further recommends that the indictment be dismissed without prejudice.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.  28 U.S.C.

§ 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: November 22, 2022

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge